## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NORIS DIAZ, a.k.a TAÍNA, **Plaintiff,** v. EMMANUEL GAZMEY SANTIAGO, a.k.a. ANUEL AA, **Defendant.** | **CIVIL NO.** 18-1779 (RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge

Pending before the Court is Defendant Emmanuel Gazmey-Santiago's *Motion to Dismiss* for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 17). Having considered the parties' submissions in support and opposition thereto, the Court **GRANTS** the *Motion to Dismiss*. Simply put, the *Second Amended Complaint* fails to plausibly aver "actual malice," which is a constitutionally-required essential element of Plaintiff Noris Díaz's claims given her status as a public figure.

### I. INTRODUCTION

This case arises out of a "diss track" or "diss song" entitled "Intocable—Tiraera pa Cosculluela" ("*Intocable*") by Defendant Emmanuel Gazmey-Santiago, a famous rapper-trapper also known as "Anuel AA." In *Intocable*, Mr. Gazmey-Santiago boasts of past

criminal activity, threatens, and seeks to excoriate rival singer José Fernando Cosculluela-Suaréz ("Cosculluela").[1] *Intocable* was published on September 11, 2018. (Docket No. 11 ¶ 5.1). This lawsuit followed on October 16, 2018. (Docket No. 1).

Noris Díaz ("Ms. Díaz" or "Plaintiff") is a famous model and television host also known as "La Taína."[2] In her *Amended Complaint*, Ms. Díaz alleges that she is the subject of one of *Intocable's* vituperative verses and seeks mental anguish damages for both defamation and false light invasion of privacy. (Docket No. 11 ¶¶ 5.5-7.4).

Mr. Gazmey-Santiago moved to dismiss the *Amended Complaint* on April 17, 2019. (Docket No. 17). In a nutshell, Mr. Gazmey-Santiago argues that the *Amended Complaint* should be dismissed for the following reasons: (a) the correct translation of the offending verse's word "puerca" is "pig" and not "slut" as averred by Ms.

---

[1] A "diss track" or "diss song" is "a song whose primary purpose is to verbally attack someone else, usually another artist. Diss tracks are often the result of an existing, escalating feud between the two people; for example, the artists involved may be former members of a group, or artists on rival labels." Wikipedia, *Diss (music)*, https://en.wikipedia.org/wiki/Diss_(music)(last checked on March 3, 2020). Trap music "is a style of hip hop music that originated in the Southern United States during the late 1990s. The term trap refers to buildings where drugs are sold illegally." Wikipedia, *Trap music*, https://en.wikipedia.org/wiki/Trap_music (last checked on March 3, 2020). "Latin trap," also known as "Spanish-language trap," emerged as a new movement of trap music in 2015 and is "similar to mainstream trap which details ''la calle,' or the streets—hustling, sex, and drugs.'" Id. Thus, *Intocable's* truculent and harsh lyrics seem to follow the conventions of these genres.

[2] "Taína" is the term for female members of the Taíno people, an "Arawakan-speaking people who at the time of Christopher Columbus's exploration inhabited what are now Cuba, Jamaica, Hispaniola (Haiti and the Dominican Republic), Puerto Rico, and the Virgin Islands." Encyclopedia Britannica, *Taino*, https://www.britannica.com/topic/Taino (last checked on March 3, 2020).

Díaz in the *Amended Complaint*; (b) if Ms. Díaz's erroneous translation is credited, then the offending verse consists of opinions and rhetorical hyperbole protected by the First Amendment to the Constitution of the United States; and (c) "the song does not refer to Noris Díaz, it refers to a Taína." (Docket No. 17 at 9-15).[3]

The Court need **not** decide any of the foregoing issues as other legal grounds lead to dismissal of the *Second Amended Complaint*. First, Ms. Díaz cannot dispute that she is a public figure for First Amendment purposes. Second, U.S. Supreme Court precedent under the First Amendment to the Constitution of the United States **requires** that public figures establish "actual malice" to prevail on defamation claims and the *Second Amended Complaint*'s allegations of actual malice amount to "legal boilerplate" devoid of factual details sufficient to state a plausible claim for defamation that can survive a challenge under Fed. R. Civ. P. 12(b)(6). Lastly, Ms. Díaz's claim for false light invasion of privacy must also be dismissed because it is a restatement of her defamation claim.

---

[3] Pursuant to this Court's Order at Docket No. 47, on February 26, 2020, Plaintiff filed a *Second Amended Complaint*, amending the jurisdictional allegations. In all other respects, the *Amended Complaint* and *Second Amended Complaint* contain **identical facts and allegations**. (Docket Nos. 11 and 48). Hence, Defendant's *Motion to Dismiss* remains applicable to the *Second Amended Complaint*.

## III. APPLICABLE LAW

**A. Dismissal pursuant to Fed. R. Civ. P. 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) allows a complaint to be dismissed for "failure to state a claim upon which relief can be granted." When ruling on a motion to dismiss under this rule, courts must determine whether "*all* the facts alleged [in the complaint], when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011). This requires treating "any non-conclusory factual allegations in the complaint as true." Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20 (D.P.R. 2013). Courts may also consider: "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,'(b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55–56 (1st Cir. 2012) (quoting Arturet–Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n. 2 (1st Cir. 2005)).

The First Circuit has repeatedly upheld dismissal of claims for defamation devoid of plausible allegations of "actual malice." *See* Lemelson v. Bloomberg, 903 F.3d 19, 26 (1st Cir. 2018) (finding that plaintiff's claims could not survive Rule 12(b)(6) because plaintiff had "not laid out sufficient facts to push his allegation of actual malice across the line from conceivable to plausible.")

(internal quotations omitted); Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012) (dismissing a complaint that contained conclusory allegations about 'ill-will' and 'actual malice,' but no factual assertions to support these conclusions."); Schatz, 669 F.3d at 55-58.

**B.   Claims for Defamation under Puerto Rico law**

Claims for defamation under Puerto Rico law arise from three sources: (1) Section 8 of Article II of the Constitution of the Commonwealth of Puerto Rico; (2) the Libel and Slander Act of 1902, P.R. Laws Ann. tit. 32, §§ 3141-49; (3) Puerto Rico's General Tort Statute, Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141. *See* Aponte v. Calderón, 284 F.3d 184, 197 (1st Cir. 2002); Casiano-Cains v. College of Public Performance Producers, 2013 WL 1223453 (D.P.R. 2013).

Section 8 of Article II of the Constitution of the Commonwealth of Puerto Rico guarantees that "[e]very person has the right to the protection of law against abusive attacks on his honor, reputation and private or family life." Puerto Rico Const. Art. II, § 8. This constitutional guarantee "provides a right of action without enabling legislation." Aponte, 284 F.3d at 197. (citing Porto v. Bentley P.R., Inc., 132 P.R. Dec. 331, 343 (1992)). To interpret these sources, the Puerto Rico Supreme Court follows the common law tradition. Id.

Claims for defamation encompass both libel and slander. *See* P.R. Laws Ann. tit. 32, § 3141. The Libel and Slander Act of 1902 expounds that:

> Libel is the malicious defamation of a person made public by writing, printing, sign, picture, representation, effigy, or other mechanical mode of publication tending to subject him to public hatred or contempt, or to deprive him of the benefit of public confidence and social intercourse, or to injure him in his business, or in any other way to throw discredit, contempt or dishonor upon him.

P.R. Laws Ann. tit. 32, § 3142. Slander, in turn, is a "false and unprivileged publication other than libel, which imputes to any person the commission of a crime or tends directly to injure him in respect to his office, profession, trade or business, or which by natural consequences causes actual damages." P.R. Laws Ann. tit. 32, § 3143.

The boundaries of these safeguards for a person's honor and reputation are defined by the First Amendment's protections for freedom of speech. The First Amendment provides in the relevant part: "Congress shall make no law abridging […] the freedom of speech." U.S. Const. Amend I. This "free speech clause" of the First Amendment fully applies to Puerto Rico. *See* El Vocero de Puerto Rico (Caribbean Intern. News Corp. v. Puerto Rico, 508 U.S. 147, 148 n. 1 (1993). While the U.S. Supreme Court has not held that the First Amendment categorically protects **all** opinions, it has found that it "**provides protection for statements that cannot**

**'reasonably [be] interpreted as stating actual facts" about an individual.'"** Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990) (emphasis added) (quoting Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 50 (1988)). *See also* Boladian v. UMG Recordings, Inc., 123 F. App'x 165, 171 (6th Cir. 2005) (finding that, consistent with Milkovich, general statements that do not relate to a specific time period or locale are not defamatory because they are not susceptible to verification.). Accordingly, "imaginative expression" and "loose, figurative, or hyperbolic language" are protected and not considered defamatory. Id. at 20-21. (citations omitted). Likewise, insults, mere obscenities and verbal abuse that are not objectively verifiable and cannot be interpreted as factual are also not defamatory. *See* Beverly Enterprises, Inc. v. Trump, 182 F.3d 183, 187-88 (3d Cir. 1999) (concluding that "vulgar name-calling is frequently resorted to by angry people without any real intent to make a defamatory assertion, and it is properly understood by reasonable listeners to amount to nothing more.") (quoting Restatement (Second) of Torts § 566, comment e (1977)).

"In Puerto Rico the tort of defamation can be either intentional or negligent, depending on whether the defamed is a private or public figure." Segarra Jimenez v. Banco Popular, Inc., 421 F. Supp. 2d 452, 458 (D.P.R. 2006), aff'd sub nom. Segarra-Jimenez v. Banco Popular de Puerto Rico, 235 F. App'x 2 (1st Cir.

2007). A private figure alleging defamation needs to "prove: (1) that the information is false, (2) that plaintiff suffered real damages, and (3) […] that the publication was negligent." Ayala Gerena v. Bristol Myers-Squibb Company, 95 F.3d 86, 98 (1st Cir. 1996) (citations omitted). However, when the plaintiff is a "public figure," the First Amendment's protection of free speech also requires proving that the defendant acted with "**actual malice.**" *See* New York Times v. Sullivan, 376 U.S. 254, 279-280 (1964); Colón Pérez et al v. Televicentro de Puerto Rico et al, 175 D.P.R. 690, 706 (2009) (recognizing that the New York Times v. Sullivan doctrine is controlling).

In this context, "public figures" are those who:

> have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.

Gertz v. Robert Welch, 418 U.S. 323, 345 (1974). *See also* Oliveras v. Paniagua Diez, 115 D.P.R. 257, 263-265 (1984). There are two ways by which individuals become public figures: (1) they either "achieve pervasive fame or notoriety" and become "a public figure for all purposes and in all contexts;" or (2) they "voluntarily inject[t] or [are] drawn into a particular public controversy" becoming a public figure for "a limited range of

issues." Id. at 351. *See also* McKee v. Cosby, 874 F.3d 54, 61 (1st Cir. 2017). The determination of whether plaintiff is a "public figure" for First Amendment purposes is **a question of law for the Court** because it entails matters of a constitutional dimension. *See* Pendleton v. City of Haverhill, 156 F.3d 57, 67-68 (1st Cir. 1998) ("the question of whether a defamation plaintiff is a public figure is properly resolved by the court, not by the jury, regardless of the contestability of the predicate facts.").

Public figures, by their very nature, can command public interest and have "sufficient **access** to the means of counter-argument to be able to expose through discussion the falsehood and fallacies of the defamatory statements." Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 12 (1st Cir. 2011) (quoting Curtis Publ'g Co. v. Butts, 388 U.S. 130, 154-55, (1967)). In other words, unlike private individuals, public figures have the opportunity "to contradict the lie or correct the error and thereby to minimize its adverse impact on [their] reputation." Gertz, 418 U.S. at 344. Thus, to recover damages for defamation, public figures bear "the heavy, and often insurmountable, burden of proving actual malice." Lluberes, 663 F.3d at 14. The Supreme Court has reiterated that said requirement serves to "further ensure that debate on public issues remains 'uninhibited, robust, and wide-open.'" Milkovich, 497 U.S. at 20 (quoting New York Times, 376 U.S., at 270).

"Actual malice" exists when a statement is made "with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times, 376 U.S. at 280. Actual malice is not measured by "reasonably prudent conduct nor an industry's professional standards, rather it is **wholly subjective**." Levesque v. Doocy, 560 F.3d 82, 90 (1st Cir. 2009) (emphasis added) (internal citations omitted). Thus, to prove its existence, a public figure plaintiff must show "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 731, 88 S. Ct. 1323, 1325, 20 L. Ed. 2d 262 (1968). *See also* Bose Corp. v. Consumers Union of U.S., Inc., 692 F.2d 189, 195 (1st Cir. 1982), aff'd, 466 U.S. 485, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984) (finding that the actual malice standard requires "a showing that the statement was made with a 'high degree of awareness of ... probable falsity.'") (quoting Garrison v. Louisiana, 379 U.S. 64, 74 (1964)).

The subjective "knowledge of falsity or reckless disregard of truth […] must be established by **clear and convincing proof**." Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583, 586 (1st Cir. 1980). *See also* Gertz, 418 U.S. at 342. Given that "direct evidence of subjective belief rarely exists, 'a court will typically infer actual malice from objective facts.'" Lemelson, 903 F.3d at 24 (quoting Bose Corp., 692 F.2d at 196. Said facts

should evince "negligence, motive, and intent such that an accumulation of the evidence and appropriate inferences supports the existence of actual malice." Bose Corp., 692 F.2d at 196.

## IV. OPERATIVE FACTS

Pursuant to the standard governing dismissal under Fed. R. Civ. P. 12(b)(6), the following facts, derived from the non-conclusory allegations in Díaz's *Second Amended Complaint*, are taken as true for purposes of this motion:

1. Plaintiff Noris Díaz has been publicly known as "La Taína" for the past twenty-six (26) years. (Docket No. 48 ¶ 4.1)

2. Plaintiff is a famous model and television host who has appeared in numerous commercials and advertisements. She has also had brief roles in two feature films, hosted radio programs and produced several calendars of her likeness. (Id. ¶ 4.2)

3. On August 1, 2011, Ms. Díaz announced, via a press release, that she is HIV positive. She has never disclosed to the public how she contracted this infection. (Id.)

4. Defendant Emmanuel Gazmey-Santiago, also known as Anuel AA is a rap, trap and reggaeton artist. He has authored, recorded and released numerous compositions and songs. (Id. ¶ 4.3)

5. On September 11, 2018, Mr. Gazmey-Santiago released a song, in the Spanish language, named "*Intocable -- Tiraera pa Cosculluela,*" ("*Intocable*"). *Intocable* was primarily intended to disparage and insult rival rapper Cosculluela. (Id. ¶ 5.1)

6.  On September 11, 2018, Mr. Gazmey-Santiago shared *Intocable* on YouTube and Twitter; and, on September 12, 2018, he posted its lyrics on various other websites. (Id. ¶ 5.2)

7.  As of the date the *Second Amended Complaint* was filed, the sound and video recording, as well as the lyrics of the song, remain uncensored and accessible, via Internet, to audiences worldwide. (Id.)

8.  As of the date the *Second Amended Complaint* was filed, one of the various versions of *Intocable* alone has registered 4,188,273 views and generated 5,283 comments by music fans on YouTube. (Id. ¶ 5.3)

9.  One of *Intocable's* lyrics reads as follows:

Calvito, you did the micro-pigmentation (ha ha)
Pitcher-face that you were drunk
And in Miami drugged you even screwed a male (uy)
Albino, snitched to Gina
And I am untouchable from the feet to the bangs (ha ha)
*Keep screwing gays in the cabin*
*That is going to give you AIDS like the slut Taina (ahh)*

(Id. ¶ 5.5)

10. On September 12, 2018, Ms. Diaz became aware of the song *Intocable* and its lyrics. (Id. ¶ 5.7)

### V. ANALYSIS

**A. Ms. Díaz is a public figure**

"An individual who achieves "'pervasive fame or notoriety' is deemed a public figure for all purposes.'" Díaz Rodríguez v. Torres Mártir, 394 F.Supp. 2d 389 (D.P.R. 2005) (quoting Gertz, 418 U.S.

at 351). According to a leading treatise on defamation law, "**[e]ntertainers and other prominent 'personalities' are perhaps the best examples of individuals who achieve public figure status** less from voluntary entry into a controversy and more by sheer fame and position-the hallmarks of the all-purpose public figure." 1 Rodney A. Smolla, Law of Defamation, § 2:83 (November 2019) (emphasis added).

In Díaz Rodríguez v. Torres Mártir, the District of Puerto Rico found that Rafael José Díaz Rodríguez ("Rafael José"), "a well-known media personality that hosts and appears on television programs broadcasted on the Univision Television Network" was a public figure, **inter alia**, because he was well-known in Puerto Rico. *See* Díaz Rodríguez, 394 F. Supp. 2d at 391-393.

Here, Ms. Díaz alleged that she is "a model and television host" who has "appeared in numerous commercials and ads," "had brief roles in two feature films," and "hosted radio programs." (Docket No. 48 ¶ 4.2). Hence, by Plaintiff's own admissions, the Court must necessarily conclude that she is a public figure. Moreover, Ms. Diaz indirectly conceded her public figure status through her ultimately unsuccessful allegations of actual malice which are discussed below. (Id. at ¶¶ 6.2, 7.2).

### B.  Ms. Díaz did not plausibly plead actual malice

As a public figure, Ms. Díaz must establish actual malice. On a Fed. R. Civ. P. 12(b)(6) motion to dismiss, **the Court is not**

**concerned with whether the complaint plausibly alleges defamation or "questions of evidentiary sufficiency" but rather with whether plaintiff "la[id] out enough facts from which malice might reasonably be inferred**." Lemelson, 903 F.3d at 24 (internal quotation marks and citations omitted) (emphasis added). *See also* Schatz, 669 F.3d at 56. In other words, Ms. Díaz's well-pleaded facts "must nudge [her] actual malice claim across the line from conceivable to plausible." Id.

With respect to her defamation claim, Ms. Diaz's attempted to allege "actual malice" as follows:

> The passage of *Intocable* regarding **Diaz** is false and **Gazmey**, **with knowledge of its falsity or with reckless disregard for its truthfulness**, maliciously released the song's audio and video recording and published its lyrics on various Websites that are accessible, through the Internet, to the public at large in all countries around the globe.

(Docket No. 48 at ¶ 6.2) (emphasis added). These allegations lack facts from which "actual malice" can reasonably be inferred. Instead, **they consist of legal conclusions recapitulating the actual malice standard** as defined in New York Times v. Sullivan, which is insufficient to survive scrutiny under Fed. R. Civ. P. 12(b)(6). *See* Schatz, 669 F.3d at 55-56 (holding that when handling a Rule 12(b)(6) motion to dismiss, courts must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements.").

In Schatz v. Republican State Leadership Comm., the First Circuit upheld dismissal of a defamation claim because plaintiff's complaint relied on "actual-malice buzzwords, contending that the [defendant] RSLC had 'knowledge' that its statements were 'false' or had 'serious doubts' about their truth and 'reckless disregard' for whether they were false." Schatz, 669 F.3d at 56. The First Circuit held that those allegations were "merely legal conclusions, which must be backed by well-pled facts" to survive a Fed. R. Civ. Pro. 12(b)(6) motion to dismiss. Id.

In Shay v. Walters, the First Circuit likewise upheld dismissal of a defamation claim for failure to plead actual malice:

> While the plaintiff's complaint **contains conclusory allegations about 'ill-will' and 'actual malice,' it contains no factual assertions that in any way lend plausibility to these conclusions**. Similarly, the complaint does not contain any facts suggesting that the defendant acted negligently in publishing the challenged statements. In determining whether allegations cross the plausibility threshold, **an inquiring court need not give weight to bare conclusions, unembellished by pertinent facts**.

Shay, 702 F.3d at 82-83 (emphasis added).

Returning to facts of the *Second Amended Complaint*, Ms. Díaz alleged that Mr. Gazmey-Santiago "publicly acknowledged that the stanza object of this Complaint is disrespectful to **Diaz** but claimed that he 'recorded that song frustrated and filled with hatred … without thinking about the consequences that it would bring' or 'how she was going to feel.'" (Docket No. 48 at ¶ 5.9).

These allegations are also **<u>insufficient</u>** to establish "actual malice" because "[d]espite its name, **the actual malice standard does not measure malice in the sense of ill will or animosity**, but instead the speaker's subjective doubts about the truth of the publication." <u>Church of Scientology International v. Behar</u>, 238 F.3d 168, 174 (2nd Cir. 2001)(emphasis added) (citing <u>Masson v. New Yorker Magazine, Inc.</u>, 501 U.S. 496, 510 (1991)) ("Actual malice under the *New York Times* standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will."). Assuming that the *Second Amended Complaint* directly quoted Mr. Gazmey-Santiago, his expressions do not support a reasonable inference that he knowingly or recklessly disregarded the truth. (Docket No. 48 at ¶ 5.9).

The Court ends by addressing Ms. Díaz's "false light invasion of privacy" claim. The Court's research did not find case law from the Supreme Court of Puerto Rico recognizing such a claim under Puerto Rico's General Tort Statute, Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141. Be that as it may, Ms. Díaz's false light invasion of privacy claim simply recasts her defamation claim:

> The passage of *Intocable* regarding **Diaz** is false and **Gazmey, with knowledge of its falsity or with reckless disregard for the truthfulness of its lyrics and the false light in which Plaintiff would be placed,** publicized such lyrics to the public at large or to so many persons that the matter must be regarded substantially certain to become public knowledge."

(Docket No. 48 at ¶¶ 7.2) (emphasis added). Thus, Ms. Diaz's false light invasion of privacy claim must also be dismissed for her failure to plausibly plead "actual malice." *See* Brown v. Hearst Corporation, 54 F.3d 21, 27 (1st Cir. 1995)(holding that because plaintiff's false light invasion of privacy claim was simply a restatement of the defamation claim under the different heading, it could not escape the same constitutional constraints as the defamation claim); *see also* Shay, 702 F.3d at 83 ("The Supreme Court has made it pellucid that a failed defamation claim cannot be recycled as a tort claim for negligent or intentional infliction of emotional distress").

## IV. CONCLUSION

"[I]n public debate [we] must tolerate insulting, and even outrageous, speech in order to provide 'adequate breathing' space to the freedoms protected by the First Amendment." Snyder v. Phelps, 562 U.S. 443, 458 (2011) (quoting Boos v. Barry, 485 U.S. 312, 322 (1988)). Requiring that public figures prove actual malice to prevail in defamation claims is merely one mechanism to ensure said "breathing space." Falwell*,* 485 U.S. at 56). Dismissal of Ms. Díaz's *Second Amended Complaint* is required by her pleadings' deficiencies and precedent protecting freedom of speech.

For the foregoing reasons, Defendant's *Motion to Dismiss* at Docket No. 17 is **GRANTED**. Plaintiff's *Second Amended Complaint* is

dismissed for failure to state a claim upon which relief can be granted. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 3rd day of March 2020.

S/ RAÚL M. ARIAS-MARXUACH  
United States District Judge